UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERRI HILL, JANE COLLETT, MARY MCCARTY, | ) | 1:15-cv-00141-JMS-DKL |
| JAMES SINES, SHERRY WHITESIDE, AND | ) | |
| JACQUELINE MOORE, | ) | HON. JANE MAGNUS-STINSON |
| *Plaintiffs*, | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO SEVER AND TRANSFER PLAINTIFFS' CLAIMS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

    I.     The Nature of Plaintiffs' Claims .................................................................... 2

    II.    Related Cases and Previous Efforts to Coordinate Cymbalta
          Withdrawal Litigation ..................................................................................... 4

ARGUMENT ................................................................................................................ 8

    I.     Plaintiffs' Claims Should Not Be Severed ..................................................... 8

          A.    Legal Standards for Permissive Joinder and Severance of
               Claims ................................................................................................ 8

          B.    Plaintiffs' Claims Arise Out of the Same Transaction or
               Occurrence ......................................................................................... 9

          C.    Plaintiffs' Claims Present Common Questions of Law and Fact ........... 11

          D.    Joinder Facilitates and Promotes Judicial Economy .............................. 13

          E.    Joinder Will Not Result in Confusion or Prejudice ................................ 13

    II.    Plaintiffs' Claims Should Not Be Transferred Out of This District .................. 14

          A.    Legal Standard for Transfer ................................................................ 14

          B.    Plaintiffs' Choice of Forum Is Paramount ............................................ 14

          C.    The Convenience of the Parties and Witnesses Does Not Favor
               Transfer ............................................................................................ 15

          D.    The Interests of Justice Do Not Favor Transfer Because
               Adjudication in this District Is More Efficient and Reduces
               Burden on Judiciary ......................................................................... 19

CONCLUSION ............................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Aldridge v. Forest River, Inc.*,
    436 F. Supp. 2d 959 (N.D. Ill. 2006) ................................................................. 17

*Ali v. Eli Lilly and Company*,
    1:14-cv-1615-AJT-JFA, slip op. (E.D. Va. Mar. 4, 2015)................................. 6, 15

*Almond v. Pfizer Inc.*,
    No. 1:13-CV-25168, 2013 WL 6729438 (S.D. W.Va. Dec. 19, 2013) .............................. 10

*Am. Cas. Co. of Reading, PA. v. Filco*,
    No. 04 C 3782, 2004 WL 2674309 (N.D. Ill. Oct. 15, 2004) ............................... 18

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) ................................................................ 14, 18, 19

*Collins v. Novartis Pharm. Corp.*,
    No. 2:13-CV-02363 WHW, 2014 WL 6474188 (D. N.J. Nov. 19, 2014)........................... 17

*Dada v. Wayne Twp. Trustee's Office*,
    No. 1:07-CV-274, 2008 WL 2323485 (N.D. Ind. May 30, 2008) ........................................ 10

*Davood v. Pfizer Inc.*,
    No. 4:14-CV-970 CEJ, 2014 WL 2589198 (E.D. Mo. June 10, 2014)................................ 12

*Dobson Bros. Const. Co. v. D.M. Dozers, Inc.*,
    No. 4:06CV3235, 2007 WL 258309 (D. Neb. Jan. 25, 2007) ............................................ 16

*Douglas v. GlaxoSmithKline, LLC*,
    No. 4:10CV971 CDP, 2010 WL 2680308 (E.D. Mo. July 1, 2010).................................... 12

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)............................................................................................ 14

*Hebel v. Ebersole*,
    543 F.2d 14 (7th Cir. 1976) ................................................................................ 13

*Hoffman v. Jacobi*,
    No. 4:14-CV-00012-SEB-TA, 2014 WL 5456671 (S.D. Ind. Oct. 24, 2014)....................... 9

*In re Cymbalta (Duloxetine) Products Liab. Litig.*,
    MDL NO. 2576, 65 F. Supp. 3d 1393 (J.P.M.L. 2014)....................................... 4

ii

*In re High Fructose Corn Syrup Antitrust Litig.*,
   293 F.Supp.2d 854 (C.D. Ill. 2003) ................................................................. 9

*In re Nat'l Presto Indus., Inc.*,
   347 F.3d 662 (7th Cir. 2003) ........................................................................ 14

*J.C. ex rel. Cook v. Pfizer, Inc.*,
   No. 3:12-CV-04103, 2012 WL 4442518 (S.D. W.Va. Sept. 25, 2012) ............................... 11

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ..................................................................... 5, 6

*McDowell v. Morgan Stanley & Co., Inc.*,
   645 F. Supp. 2d 690 (N.D. Ill. 2009) ............................................................... 9

*McLernon v. Source Int'l, Inc.*,
   701 F. Supp. 1422 (E.D. Wis. 1988) ................................................................. 9

*Mohamed v. Mazda Motor Corp.*,
   90 F. Supp. 2d 757 (E.D. Tex. 2000) ................................................................ 17

*Moore v. Motor Coach Indus., Inc.*,
   487 F. Supp. 2d 1003 (N.D. Ill. 2007) ............................................................. 17

*Mosley v. Gen. Motors Corp.*,
   497 F.2d 1330 (8th Cir. 1974) ...................................................................... 9

*Motorola Mobility, Inc. v. Microsoft Corp.*,
   804 F. Supp. 2d 1271 (S.D. Fla. 2011) ............................................................. 19

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ................................................................................ 19

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) ...................................................................... 15

*Rochlin v. Cincinnati Ins. Co.*,
   No. IP00-1898CHK, 2003 WL 21852341 (S.D. Ind. July 8, 2003) ................................... 12

*Saval v. BL Ltd.*,
   710 F.2d 1027 (4th Cir. 1983) ...................................................................... 9

*Scherer v. Eli Lilly and Company*,
   4:14-CV-01484-AGF, slip op. (E.D. Mo. Mar. 17, 2015) .......................................... 7, 8

iii

*Spearman v. Tom Wood Pontiac-GMC, Inc.*,
  No. IP 00-1340-C-T/G, 2000 WL 33125463 (S.D. Ind. Dec. 22, 2000) .............................. 9

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ........................................................................................... 14

*Warshawsky & Co v. Arcata Nat'l Corp.*,
  552 F.2d 1257 (7th Cir. 1977) ............................................................................ 18

*Yocham v. Novartis Pharmaceuticals Corp.*,
  565 F. Supp. 2d 554 (D. N.J. 2008) ................................................................ 16, 18

## **Statutes**

21 U.S.C. § 1390 ................................................................................................ 6

28 U.S.C. § 1391 ................................................................................................ 6

28 U.S.C. § 1407 ................................................................................................ 4

## **Rules**

Fed. R. Civ. P. 20 ......................................................................................... 8, 9, 13

## INTRODUCTION

Plaintiffs Terri Hill, Jane Collett, Mary McCarty, James Sines, Sherry Whiteside, and Jacqueline Moore ("Plaintiffs") joined their claims together and filed them in this forum, the corporate home of defendant Eli Lilly ("Lilly"), in the interests of economy and efficiency. Plaintiffs' claims arise from Lilly's common failure to warn of the risk of serious withdrawal symptoms inherent in stopping the prescription drug, Cymbalta, even upon tapering.

This lawsuit is one of hundreds filed around the country, including several within this district, and is part of thousands of cases within the pipeline. Originally, there was an effort to create a multidistrict litigation proceeding, but Lilly vigorously opposed centralization, vowing to the Judicial Panel on Multidistrict Litigation to avoid any need for a centralized proceeding by voluntary cooperating with Plaintiffs' counsel. Taking Lilly's representations at face-value, Plaintiffs' counsel proposed a tolling agreement whereby, in lieu of filing thousands of cases around the country, Lilly would be allowed to collect medical records and conduct "discovery" on each case so the parties could explore out-of-court resolution. Lilly rejected the proposal. Plaintiffs then proposed transferring all the already-filed cases to this district and file future cases here as well, to allow a centralized proceeding immediately next to Lilly's headquarters and company witnesses. Lilly, again, rejected the proposal. So, facing a logistical quagmire, Plaintiffs moved to transfer cases proceeding in other districts to this Court. Lilly opposed such efforts and Courts, wary of transferring all these cases on this Court without its consent, denied the motions without prejudice, pending the creation of some coordinated proceeding in this Court.

Now, in a continued effort to decentralize these cases, spread Plaintiffs out, and force each case to be too expensive to pursue, i.e., using the transactional costs associated with litigation as a shield against injured people's redress, Lilly moves to sever Plaintiffs' claims and transfer them **from**

1

**its own home jurisdiction** to six different districts.  And, to be clear, this same motion will be filed in the other cases pending before this Court as well.[1]

This effort to decentralize should be denied outright, on principle.  It is nothing more than a defendant using the costs of litigation as a way to marginalize the harm it has caused on many thousands of people.  Notwithstanding, this motion also fails on the merits.  First, Plaintiffs' claims are properly joined because they arise from a common transaction or occurrence and present common questions of law and fact.  Severance serves no valid purpose.  Second, Lilly has not demonstrated that the balance of transfer factors weighs so strongly in its favor that Plaintiffs' choice of forum (Lilly's home jurisdiction) should be disturbed.   Indeed, the interest of judicial economy favors both joinder of Plaintiffs' claims and litigation in the Southern District of Indiana.  Respectfully, this motion should be denied in its entirety.

## BACKGROUND

### I.    The Nature of Plaintiffs' Claims

Plaintiffs originally filed suit on February 2, 2015, *see* ECF No. 1, and filed their Second Amended Complaint, ECF No. 16 ("SAC"), on March 30, 2015.  Their claims are about Lilly's design and promotion of Cymbalta, a Serotonin and Norepinephrine Reuptake Inhibitor (SNRI) that is prescribed to treat depression, anxiety, fibromyalgia, diabetic neuropathic pain, and even chronic pain such as knee pain or lower back pain.  Cymbalta, which has an extremely short half-life, can cause debilitating and lasting withdrawal symptoms upon cessation of treatment.  In 2005, the year after Cymbalta's initial approval by the Food and Drug Administration ("FDA"), Lilly published an

---

[1] The other Cymbalta withdrawal cases in this Court where undersigned counsel is an attorney of record are: *Boles v. Eli Lilly and Co.*, 15-cv-351-JMS-DKL (S.D. Ind.), *DeCrane v. Eli Lilly and Co.*, 15-cv-365-JMS-DKL (S.D. Ind.), *Bickham v. Eli Lilly and Co.*, 15-cv-531-JMS-MJD (S.D.

article in an academic medical journal in which it stated that the risk of experiencing withdrawal upon abrupt cessation was 44.3%.  SAC ¶ 28.  Lilly did not include this information in the U.S. Cymbalta label, nor did it engage in widespread dissemination of "Dear Doctor" letters containing this information.  *See* SAC ¶ 33.

> Cymbalta's U.S. label states as follows:
>
> Following abrupt or tapered discontinuation in placebo-controlled clinical trials the following symptoms occurred at a rate **greater than or equal to 1%** and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis and vertigo . . . .
>
> . . . A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible.

SAC ¶¶ 26-27 (emphasis added).

> In contrast, the European label for Cymbalta includes a starkly different warning about withdrawal:
>
> In clinical trials adverse events seen on abrupt treatment discontinuation occurred in **approximately 45%** of patients treated with Cymbalta . . . in some individuals [withdrawal symptoms] may be prolonged (2-3 months or more).

SAC ¶¶ 28 n.1, 136.c (emphasis added).

Plaintiffs alleged that they were injured as "a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms."  SAC ¶ 36.  Plaintiffs brought six

---

Ind.), *Jones v. Eli Lilly and Co.*, 15-cv-700-JMS-MJD (S.D. Ind.), and *Washington v. Eli Lilly and Co.*, 15-cv-700-WTL-DML (S.D. Ind.).

causes of action: negligence, design defect, failure to warn, negligent misrepresentation, fraud, and breach of implied warranty.  SAC ¶¶ 91-153.

## II.      Related Cases and Previous Efforts to Coordinate Cymbalta Withdrawal Litigation

Lilly's decision to omit important information about the severity, frequency, and duration of Cymbalta withdrawal from its label and promotional materials was, of course, not unique to Plaintiffs.  Over fifty related cases have been filed across the country, with over 170 plaintiffs, and over 2,700 individuals are presently retained by Plaintiffs' counsel to pursue claims for personal injuries resulting from Cymbalta withdrawal.  In August 2014, Plaintiffs' counsel filed a motion to create a multidistrict litigation ("MDL") proceeding with the Judicial Panel on Multidistrict Litigation ("JPML").  Lilly opposed this motion, and the JPML decided against creating an MDL.  *See In re Cymbalta (Duloxetine) Products Liab. Litig.*, MDL NO. 2576, 65 F. Supp. 3d 1393 (J.P.M.L. 2014).  The JPML acknowledged that "these actions share factual issues concerning Cymbalta's development, marketing, labeling, and sale" and that "[t]he actions in this docket are highly similar."  *Id.*  However, the JPML did not believe an MDL was appropriate, reasoning (1) that the procedural posture of the cases was too diverse, i.e., earlier-filed cases were too far along and later-filed cases were "in their infancy," (2) that "most, if not all, of the common discovery has already taken place in those earlier-filed actions" even though "plaintiffs dispute the adequacy of Lilly's production," and (3) that the relatively small number of plaintiff's firms involved allowed for voluntary coordination.  *Id.*[2]

The JPML's refusal to create an MDL meant that cases pending around the country were going to proceed separately in different courts.  Faced with this logistical quagmire, plaintiffs'

---

[2] These factors, and the JPML's decision under 28 U.S.C. § 1407, do not bear on the analysis of permissive joinder and severance under Rule 20 and 21 or transfer under 28 U.S.C. § 1404.

4

counsel sent a letter to Lilly proposing informal coordination consistent with what Lilly asserted to the JPML Panel.  Plaintiffs' counsel proposed entering into a tolling agreement for the non-filed cases, allowing the parties to focus on the already filed cases:

> [A]s we have represented to both Lilly and the JPML, our firms have amassed hundreds—indeed, now thousands—of potential Cymbalta withdrawal plaintiffs. . . [I]n light of Mr. Imbroscio's representation to the JPML about engaging in informal coordination, we would like to explore the prospect of mass tolling.  The purpose of such an endeavor would be to streamline this litigation without burdening the judiciary (yet) with thousands of different suits, consistent with the views expressed by the JPML about the viability of informal coordination.  While this letter is not intended to set forth all of the particulars of such an arrangement, we propose the following broad strokes to start the discussion:
>
> For all of our clients not currently in suit, a tolling agreement through December 31, 2015;
>
> In exchange for mass tolling, we provide certain basic information about each claimant and necessary HIPAA releases for the pre-suit collection of medical and pharmacy records . . .

Letter from Michael Baum *et al*, 1-2 (Jan. 7, 2015), Wisner Decl., Exh. A.  The proposal sought to coordinate, informally, thousands of Cymbalta withdrawal cases without burdening the judiciary.  By giving Lilly access to medical records, Lilly would be able to evaluate the merits of each case, avoiding the filing of thousands of cases all over the country.  Lilly, however, rejected the proposal without explanation.  *See* Letter from Phyllis Jones, 1 (Jan. 13, 2015), Wisner Decl., Exh. B.

In light of the JPML's (and Lilly's) refusal to create an MDL and Lilly's refusal to informally coordinate the litigation for the thousands of cases in the pipeline, plaintiff's counsel made a third proposal to centralize these cases:

> H]aving different cases proceeding on different schedules in a multitude of different courts around the country is not efficient and creates case scheduling conflicts—a fact already evident in trying to coordinate a fraction of the cases that eventually will be filed.  We stress, again, there are thousands of cases in the pipeline.  Absent some simplification in the litigation process, this litigation will spiral out of control. …

> We now plan to file cases within the Southern District of Indiana, the district where Lilly is headquartered. This will allow coordination of cases in a single district in consideration of the volume of cases on the horizon.
>
> To further coordinate, we propose transferring existing cases that have not yet been litigated in any meaningful way (i.e., not *Herrera*, *Hexum*, or *Seagroves*) to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). . . .

Letter from Michael Baum *et al*, 1-2 (Jan. 22, 2015), Wisner Decl., Exh. C. Since Lilly is headquartered in the Southern District of Indiana, it is a suitable venue for *every* Cymbalta withdrawal case—not only is Lilly based there, a significant portion of the events giving rise to these claims, e.g., the creation of a misleading label, occurred within the district.  *See* 21 U.S.C. § 1390 (b)(1) and (b)(2).  Thus, all cases against Lilly could be set within the Southern District, creating a single "centralized" venue for all the cases.

Consistent with its strategy of *divide et impera*, Lilly rejected this third proposal.  *See* Letter from Phyllis Jones, 1 (Jan. 27, 2015), Wisner Decl., Exh. D.  According to Lilly, "[h]aving elected to file and serve the pending cases in their current venues, [Plaintiffs] have offered no justification for the transfer of those cases at this juncture."  *Id.*  And, even though placing cases in a defendant's home district is *specifically* contemplated by statute, *see* 28 U.S.C. § 1391(b)(1), Lilly stated that centralizing the litigation in the Southern District of Indiana would impair Lilly's ability to compel live trial testimony from plaintiffs' treating healthcare professionals at trial.  *Id.*

Plaintiffs in the other cases then moved to transfer their case, over Lilly's objection, to this Court.  Lilly vigorously opposed such efforts, arguing that unless extreme circumstances emerge, Plaintiffs should be bound by their original choice of jurisdiction.  *See* Lilly's Opposition to Plaintiff's Motion to Transfer Proceedings at 10-11, 11-15, *Ali v. Eli Lilly and Co.*, 14-cv-01615 (E.D. Va.), Wisner Decl., Exh. E.  Every court to hear the motion either denied the motion with prejudice, subject to the emergence of a centralized proceeding within this Court, or deferred ruling

on the matter until this Court allowed a coordinated proceeding.  *See, e.g.*, *Ali v. Eli Lilly and Company*, 1:14-cv-1615-AJT-JFA, slip op. at 9 (E.D. Va. Mar. 4, 2015), Wisner Decl. Exh. F.  For example in *Ali*, the court recognized that "[a]bsent centralization, there will be a duplication of effort in the routine aspects of each case, resulting in a substantial increase in the per case cost of those cases not centralized because of travel and other costs that could be avoided or broadly shared were the cases included within a group of centralized cases."  *Id.* at 9.  The court also recognized that "[w]ere hundreds or thousands of cases filed within the Southern District of Indiana . . . there would be little additional burden imposed upon the Southern District of Indiana or unfair prejudice to Lilly by granting Plaintiffs' request that these two additional cases be transferred."  *Id.* at 8.  In other words, the *Ali* court—which was the first to rule on the motion to transfer and was subsequently followed by other courts around the country—was uncomfortable forcing a quasi-MDL on this Court absent some indication that it was willing to accept those cases.

Separately, other attorneys with Cymbalta withdrawal cases pending in other jurisdictions, sought to voluntarily dismiss their cases and re-file in this Court, as part of a centralization effort. *See, e.g.*, *Scherer v. Eli Lilly and Company*, 4:14-CV-01484-AGF, slip op. at 4 (E.D. Mo. Mar. 17, 2015), Wisner Decl., Exh. G.  Unsurprisingly, Lilly opposed that effort as well.  The courts, however, flatly rejected Lilly efforts, as exemplified in *Scherer*:

> Plaintiffs have adequately explained that they desire dismissal so that they may refile all of their Cymbalta cases in the Southern District of Indiana to better coordinate discovery, better manage protective and scheduling orders which may affect all of the Cymbalta cases, and more efficiently resolve each action.  As Eli Lilly notes, Plaintiffs' counsel has moved to transfer at least ten other Cymbalta cases against Eli Lilly to the same court, demonstrating that Plaintiffs' purported reasons for desiring a voluntary dismissal are more than empty words. . . .
>
> Moreover, due to the early stage of this litigation, Eli Lilly will not be unduly prejudiced by this case being refiled in a different federal court.  Indeed, the only prejudice Eli Lilly can identify is that it may be more difficult to subpoena the physicians who prescribed Cymbalta to Plaintiff Elaine Scherer, as their offices are

> in Missouri.  However, Rule 45 gives federal courts the power to serve a subpoena "at any place within the United States." Fed. R. Civ. P. 45(b)(2).  This Court declines to assume that the physicians will refuse to comply with a properly served subpoena, but even should they do so, the Indiana court may still command them to attend a deposition within 100 miles of their residences or places of business. The federal rules of procedure and evidence likewise provide avenues to use such depositions at trial.

*Id.* at 4.  The Scherer plaintiff has subsequently re-filed his case in this Court.  *See Beard v. Eli Lilly and Co.*, Case No: 1:15-cv-00922-JMS-MJD (S.D. Ind.).

This case was the first case to be filed in this district, consistent with the efforts to find a centralized home for these cases.  Plaintiffs in this case elected to join their claims together and file them in the Southern District of Indiana, which is where Lilly's corporate headquarters (and corporate witnesses) are located and where material events giving rise to Plaintiffs' claims—such as Lilly's decision to omit the 45% risk from its U.S. Cymbalta label—occurred.

Again, consistent opposition to efforts to streamline Cymbalta withdrawal litigation—and in spite of its vow to voluntarily cooperate in coordination—Lilly now moves to sever Plaintiffs' claims and transfer them out of its home district to six different district courts.  Def.'s Mot. To Sever and Transfer, ECF No. 22, and Mem. In Support of Mot. To Sever and Transfer, ECF No. 23 ("Mem."). But severance is not warranted, and Lilly cannot override Plaintiffs' decision to litigate their claims here, simply because, as Lilly argues, the JPML "has already determined that consolidation is inappropriate."  Mem. at 1.  Plaintiffs' claims are appropriately joined under Rule 20, and Lilly fails to demonstrate that the transfer analysis weighs strongly in its favor as is required to disturb Plaintiffs' choice of forum.  Lilly's motion should be denied.

## <u>ARGUMENT</u>

I.    **Plaintiffs' Claims Should Not Be Severed**

   A.    **Legal Standards for Permissive Joinder and Severance of Claims**

Rule 20 permits joinder of claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and when "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20.  This Rule must be interpreted to allow for the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  The purpose of Rule 20 in permitting joinder where appropriate is "to promote trial convenience and expedite the final determination of disputes, thereby preventing unnecessary multiple lawsuits." *Hoffman v. Jacobi*, No. 4:14-CV-00012-SEB-TA, 2014 WL 5456671, at *4 (S.D. Ind. Oct. 24, 2014) (citing *McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009)).  "Absolute identity of all events is unnecessary." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).  In addition, even where claims are properly joined under Rule 20(a), the court may order separate trials to prevent delay or prejudice to the parties under Rule 20(b).  *Spearman v. Tom Wood Pontiac-GMC, Inc.*, No. IP 00-1340-C-T/G, 2000 WL 33125463, at *6 (S.D. Ind. Dec. 22, 2000).

Correspondingly, Rule 21 provides that a court may sever claims that are misjoined.  Factors courts consider when analyzing a motion to sever under Rule 21 include "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F.Supp.2d 854, 862 (C.D. Ill. 2003) (citations omitted).

### B.      Plaintiffs' Claims Arise Out of the Same Transaction or Occurrence

"Courts have adopted a flexible, case-by-case approach to determine whether a particular factual situation constitutes a single transaction or series of transactions for purposes of Rule 20(a). The ultimate question is whether the claims ... are 'logically related.'" *Spearman*, 2000 WL 33125463, at *6 (quoting *McLernon v. Source Int'l, Inc.*, 701 F. Supp. 1422, 1425 (E.D. Wis. 1988)). "Courts generally view all logically related events entitling a person to institute a legal action against another as comprising one transaction or occurrence." *Dada v. Wayne Twp. Trustee's Office*, No. 1:07-CV-274, 2008 WL 2323485, at *2 (N.D. Ind. May 30, 2008) (internal quotation marks and citation omitted).

Although Lilly focuses on the different symptoms Plaintiffs experienced as part of Cymbalta withdrawal, Mem. at 7-8, Plaintiffs' claims do not hinge on the precise withdrawal symptom that manifested.  As Plaintiffs allege throughout their Complaint, Lilly failed to warn of the *frequency*, *duration*, and *severity* of ***any*** withdrawal symptom.  *See, e.g.*, SAC at ¶¶ 1, 18, 32-36.  Lilly misleadingly listed symptoms as occurring at a rate of 1% or greater, when its own studies indicated that at least 44% of Cymbalta users would experience withdrawal.  *Id.* at ¶ 28.  In addition, while recommending "gradual tapering," Lilly both designed Cymbalta such that gradual tapering is not feasible when the minimum dose pill for which Lilly sought approval was 20 milligrams in a capsule that cannot, by Lilly's own packaging instructions, be cut to make smaller doses for tapering and weaning purposes like other pill.  *See id.* at ¶ 102.

Faced with similar claims against drug manufacturers, other courts have found a common transaction or occurrence.  For example, in *Almond v. Pfizer*, the plaintiffs alleged that Pfizer failed to warn of the risk of developing type II diabetes with its drug Lipitor and concealed relevant research. The court explained that "[t]he fact that there will be some plaintiff-specific evidence, such as individual conversations with physicians, does not defeat the permissive joinder standard." *Almond v.*

*Pfizer Inc.*, No. 1:13-CV-25168, 2013 WL 6729438, at *5 (S.D. W.Va. Dec. 19, 2013).  While Pfizer argued that the transaction or occurrence was each plaintiff's doctor's decision to prescribe and each plaintiff's use of Lipitor, the court observed that "Plaintiffs' claims are not against their doctors, but against Pfizer."  *Id.*  The court agreed with the plaintiffs that the transaction or occurrence was Pfizer's "research, development, testing, approval, labeling, marketing and distribution of Lipitor."  *Id.*  The court concluded, "Thus, Pfizer's actions and/or omissions necessarily constitute the principal transactions and occurrences at issue, and will necessarily raise common questions of law and fact."  *Id.*

Similarly, where plaintiffs joined claims against Pfizer for failure to warn of the risk of birth defects from its drug Zoloft, the court found that "Plaintiffs are similarly situated (mothers who ingested Zoloft during pregnancy and minors born to those mothers), and suffered similar injuries (birth defects), at approximately the same time (after Defendants had knowledge of the risks and failed to adequately warn of those risks)," and therefore, "Plaintiffs' claims are logically related, and arise from the same series of transactions or occurrences—namely the production, distribution, and promotion of Zoloft."  *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:12-CV-04103, 2012 WL 4442518, at *5 (S.D. W.Va. Sept. 25, 2012).

Likewise here, Plaintiffs' claims arise from the same series of transactions or occurrences— Lilly's development of Cymbalta and its decision to market it while downplaying the risk of debilitating and potentially life-threatening withdrawal symptoms.  Plaintiffs' claims hinge on Lilly's concealment of the *frequency*, *duration*, and *severity* of Cymbalta withdrawal, and Lilly's conduct in that regard is the same for each Plaintiff.

**C.      Plaintiffs' Claims Present Common Questions of Law and Fact**

11

As Plaintiffs' claims focus on Lilly's conduct, which was uniform toward each of them, Plaintiffs present several common questions of law and fact.  For example, at what point did Lilly know that the risk of Cymbalta withdrawal was significant (at least 44%) and that for approximately 10% of people suffering from withdrawal, the effects would be severe?  Could Lilly have submitted a supplemental notice to the FDA to strengthen its warning through the regulatory process?  Is the warning on the Cymbalta label adequate as a matter of law?  Are Plaintiffs' design-defect claims preempted?  What data did Lilly have to justify its vague recommendation of "gradual tapering"?  Does Lilly's data indicate that tapering off Cymbalta does not in fact lessen the risk of withdrawal?  Why did Lilly decide to identify the risk of withdrawal as 45% and state that symptoms could last "2-3 months or more" on its European Cymbalta label while omitting these facts from its U.S. Cymbalta label?

These and other common questions of law and fact will determine Lilly's liability to a much greater degree than, say, which particular withdrawal symptoms each of the Plaintiffs experienced or the underlying medical condition Cymbalta was intended to treat.  *See Rochlin v. Cincinnati Ins. Co.*, No. IP00-1898CHK, 2003 WL 21852341, at *13 (S.D. Ind. July 8, 2003) (noting, in the employment discrimination context, that where a defendant engaged in uniform conduct toward plaintiffs, it did not matter whether plaintiffs experienced different effects from that conduct).

As other courts have found, the joinder of plaintiffs alleging injury from a single drug is appropriate, because common issues of law and fact connect Plaintiffs' claims.  For example, one court observed that because "[t]he plaintiffs in this case have both filed suit against the same pharmaceutical manufacturer—GlaxoSmithKline—for injuries caused by the same drug—Avandia—during roughly the same time period—before 2007, when GlaxoSmithKline altered the warning labels on Avandia—and arising out of the same development and sales practices of Avandia by

GlaxoSmithKline. . . . the plaintiffs' common claims are sufficiently related to support joinder in this case." *Douglas v. GlaxoSmithKline, LLC*, No. 4:10CV971 CDP, 2010 WL 2680308, at *2 (E.D. Mo. July 1, 2010).  This is true even though "plaintiffs were prescribed Avandia in different states by different doctors."  *Id.*  Similarly, in *Davood v. Pfizer Inc.*, the court concluded that "plaintiffs in this case have filed suit against defendant for injuries caused by the same product arising out of the same development, distribution, marketing, and sales practices for that product, and common issues of law and fact are likely to arise in litigation."  No. 4:14-CV-970 CEJ, 2014 WL 2589198, at *2 (E.D. Mo. June 10, 2014).

Here, the court should not use its discretion to sever these common claims under Rule 21 "to separate an essentially unitary problem[.]"  *Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976).

### D.       Joinder Facilitates and Promotes Judicial Economy

The interests of judicial economy strongly weigh against severing Plaintiffs' claims.  Here, a single court can, for example, (1) determine the permissible scope of discovery, (2) enter uniform pretrial orders, (3) conduct *Daubert* hearings, (4) determine whether punitive damages are appropriate, (5) uniformly address Lilly's affirmative defenses, such as federal preemption, (6) rule on the admissibility of common evidence, and (7) determine the scope of trial.  It would be a waste of judicial resources to make several different courts adjudicate these identical issues.  With one court deciding these and other issues jointly for all the Plaintiffs, there is no risk of inconsistent rulings, or, as Plaintiffs seek injunctive relief, inconsistent injunctions.  Lilly should welcome the opportunity to have one court decide the common issues of fact and law for all six Plaintiffs.

### E.       Joinder Will Not Result in Confusion or Prejudice

Lilly's concerns about confusion and prejudice relate to issues of a joint trial.  *See* Mem. at 13-14.  But the trial date for this case is not yet set, let alone imminent.  Rule 20's purpose is still

achieved if Plaintiffs' claims are joined for pretrial proceedings and ultimately separated for trial pursuant to Rule 20(b).  If, despite the judicial economy of also trying these six cases together, this Court eventually determines that there should be separate trials for each of the six plaintiffs, it makes more sense and would be less confusing for one court to handle all six trials than for six different courts to each handle one trial—forcing another court to learn the nuances of this case, make (possibility conflicting) evidentiary rulings, and consider post-trial motions.

## II.      Plaintiffs' Claims Should Not Be Transferred Out of This District

### A.      Legal Standard for Transfer

Section 1404 allows transfer of forum "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404.  The purpose of Section 1404 is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations marks and citation omitted).  In considering a motion for transfer, a court weighs the statutory factors—the convenience of the parties, the convenience of the witnesses, and the interest of justice—which are "best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

As the movant, Lilly has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient than its own home forum.  *Id.* at 219-20.

### B.      Plaintiffs' Choice of Forum Is Paramount

"'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  In fact, in *Presto*, the Seventh Circuit

in fact noted that the balance of factors likely favored the transfer sought by the defendant, but nonetheless denied transfer, holding that "the balance is not so far askew as to justify the extraordinary relief sought by Presto." *Id.* at 665.  Here, Lilly has not come close to showing that the balance is strongly in its favor, and the "extraordinary relief" of disturbing Plaintiffs' choice of forum is not warranted.  Indeed, it is remarkable that Lilly would demand adherence to a plaintiff's initial choice of forum in opposing motions to transfer to this venue and then completely disregard it when Lilly wants to transfer out of this district.  *Compare* Lilly's Opposition to Plaintiff's Motion to Transfer Proceedings at 10-11, 11-15, *Ali v. Eli Lilly and Co.*, 14-cv-01615 (E.D. Va.), Wisner Decl., Exh. E *with* Mem. at 17-21.

### C.    The Convenience of the Parties and Witnesses Does Not Favor Transfer

With respect to the convenience evaluation, courts consider factors including the availability of and access to witnesses in each forum and the location of material events.  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  Many key corporate witnesses reside in this District, and material events giving rise to Plaintiffs' claims occurred here.

### (1) Many of Lilly's key witnesses reside in this district

Litigating here, in the Southern District of Indiana in Indianapolis, is undoubtedly convenient for Lilly.  Lilly's corporate headquarters are 1.5 miles from the courthouse.  Nearly all of Lilly's corporate witnesses and nearly all of the documents and information relevant to common discovery are located in Indianapolis—a fact Lilly argued to the JPML.  *See* Lilly's Opposition to MDL Petition at 15-17, Wisner Decl., Exh. H (describing how Lilly's witnesses are in Indianapolis).  Litigating Plaintiffs' claims here allows Lilly's corporate witnesses to testify at trial without time-consuming

travel or needless expense.[3]  More importantly, should this case proceed in a different court, outside

of the subpoena *ad testificandum* power of this Court, Plaintiffs will be prevented from subpoenaing

these witnesses live at trial.

Lilly fabricates an argument that litigating Plaintiffs' claims here "would disadvantage Lilly,"

but this is baseless.  Lilly claims that it would not "be able to obtain [Plaintiffs' doctors'] voluntary

attendance [at trial], given the travel and inconvenience involved," Mem. at 22, but it offers nothing

in support of this statement and it should not be credited.  *See Yocham v. Novartis Pharmaceuticals

Corp.*, 565 F. Supp. 2d 554, 558 (D. N.J. 2008) (denying motion to transfer in part because the

defendant provided no evidence that any of the out-of-state witnesses were in fact unwilling to

travel); *Dobson Bros. Const. Co. v. D.M. Dozers, Inc.*, No. 4:06CV3235, 2007 WL 258309, at *4 (D.

Neb. Jan. 25, 2007) (noting that defendants provided no evidence that "out-of-state witnesses would

be unwilling to come voluntarily" and no evidence "suggesting that these witnesses could not testify

adequately via deposition" and denying motion to transfer).  In *Yocham*, a products liability case

involving a prescription medication, the plaintiff filed suit in the defendant's home district rather than

her own, and the defendant moved to transfer, focusing on the potential unavailability of the

plaintiff's treating physician.  But as the *Yocham* court reasoned, "since Plaintiff will bear the burden

of proof at trial as to the issues about which her physician might testify, such as causation and

damages, there is every reason to expect that Plaintiff herself will endeavor to make such witnesses

available to testify at trial."  *Yocham*, 565 F. Supp. 2d at 558.  The same is true here.  Lilly's attempt

to argue that litigating in its hometown would be a disadvantage is nothing more than speculation,

unsupported by evidence or reason.

---

[3] And, if Plaintiffs' claims remained joined for trial, those same witnesses would only need to testify
once.

### (2) Material events occurred in this district

Lilly also makes the bold claim that Indiana "does not have a significant connection to the material events underlying Plaintiff's individual claims." Mem. at 18. This is quite remarkable, given that Indiana is Lilly's home state—both in terms of its headquarters in Indianapolis and its state of incorporation. Lilly's presence in Indiana is significant; in Indianapolis alone, its campuses occupy 367 acres, with 179 buildings housing thousands of employees.[4] Lilly's corporate headquarters are the location of the material events giving rise to Plaintiffs' claims: the research, development, and marketing of Cymbalta. Indeed, in two cases proceeding to trial in California involving Cymbalta withdrawal, Lilly has made arguments in seeking to use Indiana law regarding punitive damages (as opposed to California) because of Lilly's connection with the state.

In *Collins v. Novartis*, seventeen plaintiffs filed ten cases alleging personal injury claims against a pharmaceutical defendant, choosing to file in the defendant's home state rather than their own various home states, and the cases were consolidated for pretrial discovery. *Collins v. Novartis Pharm. Corp.*, No. 2:13-CV-02363 WHW, 2014 WL 6474188, at *1 (D. N.J. Nov. 19, 2014). The defendant moved to transfer, claiming that the plaintiffs had "no connection" to New Jersey. *Id.* at *2. But the *Collins* court observed that courts have held "that the location of a product's development, testing, and marketing is similarly significant" to the location of consumption of the product. *Id.* at *3. *See also Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007) (noting that the location of "business decisions concerning the manufacture or design of the [product] at issue" are "significant in products liability cases"); *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 961 (N.D. Ill. 2006) (in products liability case, holding that the product's manufacture, not the plaintiff's injury, was the material event giving rise to plaintiff's claims); *Mohamed v. Mazda*

*Motor Corp.*, 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000) (denying defendant's motion to transfer in part because "the location of the accident revealing the allegedly defective product is a red herring for transfer analysis in cases where plaintiff is suing for the allegedly defective design and manufacture of the product"). Moreover, the plaintiffs in *Collins* alleged liability for negligent and fraudulent conduct—as Plaintiffs do here—that took place where Novartis was located. *Collins*, 2014 WL 6474188 at *3. Accordingly, the *Collins* court concluded, "[a]lthough Plaintiffs are out-of-state residents and some facts relevant to their cases occurred in their home states, Novartis's corporate activity gives Plaintiffs' claims a factual nexus to New Jersey, too. These cases have ties to this state, and as such the Court sees fit to give customary deference to Plaintiffs' choice of forum." *Id.*

Similarly, in *Yocham*, where the plaintiff filed suit in the defendant's home district rather than her own state, the court noted that "both fora have ties to the facts at issue in Plaintiff's case, in that Plaintiff was allegedly injured in Texas by a product she alleges was negligently and/ or defectively developed, tested, and marketed in New Jersey." *Yocham*, 565 F. Supp. 2d at 559. For that reason, the plaintiff's suit was "not a case in which a plaintiff has chosen a forum with little or no apparent connection to the facts at issue in the case." *Id.* This reasoning applies equally here.

In contrast to Lilly's bald assertion that Indiana "does not have a significant connection" to Plaintiffs' claims, Mem. at 18, Plaintiffs acknowledge that witnesses are located and material events occurred in both this District and Plaintiffs' home districts. It may be that the Court determines that this factor is neutral. Even then, this factor would not support transfer. Transfer "should not merely 'shift the convenience from one party to another[.]'" *Am. Cas. Co. of Reading, PA. v. Filco*, No. 04 C 3782, 2004 WL 2674309, at *2 (N.D. Ill. Oct. 15, 2004) (quoting *Warshawsky & Co v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1977)). In fact, if considered neutral—where, as here, the

---

[4] *See* http://www.lilly.com/careers/why-lilly/Pages/locations.aspx.

parties reside in different states such that "there is no choice of forum that will avoid imposing inconvenience"—then "the tie is awarded to the plaintiff[.]"  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003).

> **D.** **The Interests of Justice Do Not Favor Transfer Because Adjudication in this District Is More Efficient and Reduces Burden on Judiciary**

The "interest of justice" analysis relates to "the efficient administration of the court system." *Coffey*, 796 F.2d at 221.  Lilly's strategy has consistently been to push for inefficient adjudication of Cymbalta withdrawal cases in order to make litigation prohibitively expensive for Plaintiffs.  This inefficiency comes at a cost to the judiciary (and the public) as well.  The Seventh Circuit has explained that "related litigation should be transferred to a forum where consolidation is feasible." *Id.*  The relief Lilly seeks would accomplish the exactly the opposite.

In this District, consolidation of related claims is possible, in addition to the joinder of Plaintiffs' claims as pleaded.  Such consolidation favors judicial economy for the reasons explained in Section A.4, *supra*.

Admittedly, Plaintiffs' claims involve the application of the tort laws of different states, and litigating in the Southern District of Indiana would require that this Court apply those state laws. There is an "interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  However, the causes of action at issue in this lawsuit, i.e., failure-to-warn and design defect claims, are not unique to Plaintiffs' states, and there are no novel or unsettled issues of state law raised by this case.  This Court is perfectly capable of applying the law of states other than Indiana. And it would be far more efficient to have one court apply the common facts to all six plaintiffs than to have six different courts do so.

Moreover, since Lilly is based in Indiana, use of a local jury to adjudicate Lilly's conduct is particularly "just."  *See, e.g.*, *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1278 (S.D. Fla. 2011) ("[D]ue to the extent of Microsoft's presence in the Western District of Washington, the local interest in this case would be higher there than in this District.").  Lilly has nearly 11,000 employees in Indiana and contracted with over 700 Indiana vendors in 2013.[5]  Therefore, this is not a situation where transfer would burden "citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 241 n.6.  Indiana jurors have a strong interest in the conduct of one of Indiana's biggest corporate citizens.

## CONCLUSION

First, Plaintiffs' claims are properly joined because they arise from a common transaction or occurrence and present common questions of law and fact.  Second, Lilly has not demonstrated that the balance of transfer factors weighs so strongly in its favor that Plaintiffs' choice of forum (Lilly's home jurisdiction) should be disturbed.  The interest of judicial economy favors both joinder of Plaintiffs' claims and litigation in the Southern District of Indiana.  Lilly's motion should be denied in its entirety.

Dated: July 7, 2015                    **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

                                        /s/ R. Brent Wisner
                                        R. Brent Wisner
                                        rbwisner@baumhedlundlaw.com
                                        12100 Wilshire Blvd., Suite 950
                                        Los Angeles, CA 90025
                                        Tel: (310) 207-3233
                                        Fax: (310) 820-7444

                                        Diane Marger Moore
                                        Indiana Attorney number 15078-29
                                        dmargermoore@baumhedlundlaw.com

---

[5] *See* http://www.lilly.com/about/key-facts/Pages/impact-on-indiana.aspx.

201 North Illinois Street
16th Floor – South Tower
Indianapolis, IN 46204
Tel: (317) 610-3437
Fax: (317) 610-3202

***Counsel for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I, Brent Wisner, hereby certify that on the 7th day of July, 2015, a true copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND TRANSFER PLAINTIFFS' CLAIMS was filed electronically with the Clerk for the United States District Court for the Southern District of Indiana using the CM/ECF system, which shall send electronic notification to counsel of record.

/s/ R. Brent Wisner
R. Brent Wisner
rbwisner@baumhedlundlaw.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444

22