UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERRI HILL, ET AL., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00141-JMS-DKL |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Presently pending in this product liability lawsuit related to Defendant Eli Lilly and Company's ("Lilly") manufacture and sale of the drug Cymbalta is Lilly's Motion to Sever and Transfer Plaintiffs' Claims. [Filing No. 22.]

## I.
### BACKGROUND

Plaintiffs' lawsuit relates to Lilly's design, manufacture, and sale of the drug Cymbalta, which is used to treat certain psychiatric and/or pain conditions. Plaintiffs characterize their lawsuit in this way:

> This civil action alleges personal injuries and damages Plaintiff[s] suffered as a result of Lilly's failure to provide adequate instructions for stopping Cymbalta and an adequate warning that fully and accurately informed Plaintiff[s] about the frequency, severity, and/or duration of symptoms associated with Cymbalta withdrawal. In addition, Plaintiff[s] allege[] that Lilly defectively designed Cymbalta pills as delayed-release capsules with beads available only in 20, 30 and 60 mg doses, with a label that instructs users that the drug "should be swallowed whole and should not be chewed or crushed, nor the capsule be opened and its contents be sprinkled on food or mixed with liquids." Lilly's design (delayed-release capsules with beads available only in 20, 30 and 60 mg doses) and accompanying instructions (Cymbalta should be "gradually tapered," but should only be "swallowed whole") prevented Plaintiffs from properly tapering off of the drug.

[Filing No. 1 at 1-2.]

Plaintiffs' counsel have filed numerous other lawsuits across the country relating to Cymbalta – and, specifically, to withdrawal symptoms they allege are associated with ceasing Cymbalta.  The parties refer to these other lawsuits in connection with several of their arguments.  Accordingly, the Court finds it necessary to lay out the history of Cymbalta litigation as initiated by Plaintiffs' counsel, before discussing this specific lawsuit and then the pending motion.

### A.  Other Cymbalta Litigation

The first small wave of Cymbalta litigation initiated by Plaintiffs' counsel was in 2012 and 2013, and most notably included an unsuccessful attempt to have a class of plaintiffs certified.  *See Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. 2014).  Activity increased in August 2014, when Plaintiffs' counsel filed several lawsuits and petitioned the Judicial Panel for Multidistrict Litigation ("JPML") for creation of a Multi-District Litigation ("MDL") in the United States District Court for the Central District of California.  By this time, twenty five actions against Lilly, filed by the same two law firms (one of which is Plaintiffs' counsel here) were pending across the country.  The JPML denied Plaintiffs' request to create an MDL on December 10, 2014, finding that "most, if not all, of the common discovery ha[d] already taken place" in earlier, related actions, and that because discovery was nearly complete and there was overlap in counsel, there could be some "informal coordination with respect to the remaining common discovery, as well as other pretrial matters…."  *In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, --- F.Supp.3d ---, MDL No. 2576, 2014 WL 7006713, *1-2 (J.P.M.L. 2014).

Plaintiffs' counsel then filed this action in February 2015, along with five other Cymbalta-related lawsuits against Lilly in this District.  All but one of the lawsuits pending in this District involve multiple plaintiffs from different states.  *See Boles, et al. v. Eli Lilly and Co.*, 1:15-cv-351-JMS-DKL (nineteen total plaintiffs from Illinois, Pennsylvania, Louisiana, Texas, California,

Tennessee, Alabama, Oklahoma, Utah, Missouri, and Minnesota); *DeCrane, et al. v. Eli Lilly and Company*, 1:15-cv-365-JMS-DKL (two plaintiffs from Kentucky); *Bickham, et al. v. Eli Lilly and Company*, 1:15-cv-531-WTL-MJD (twenty total plaintiffs from Wisconsin, California, Texas, Nevada, North Carolina, Utah, Pennsylvania, Massachusetts, Kentucky, Georgia, and Arkansas); *Washington, et al. v. Eli Lilly and   Co.*, 1:15-cv-700-WTL-DML (two total plaintiffs from Tennessee and Kentucky); and *Jones, et al. v. Eli Lilly and Co.*, 1:15-cv-701-JMS-MJD (fifteen total plaintiffs from Kentucky, West Virginia, California, Illinois, Washington, Alabama, Utah, Tennessee, Virginia, Iowa, and Ohio).

Another group of plaintiffs' counsel has filed two Cymbalta lawsuits in this District, and those lawsuits also include numerous plaintiffs from different states. *See Courtney, et al. v. Eli Lilly and Company*, 1:15-cv-643-TWP-MJD (six total plaintiffs from Louisiana, Texas, New York, Alabama, and Tennessee); and *Beard v. Eli Lilly and Company*, 1:15-cv-922-JMS-MJD (forty-six total plaintiffs from New York, Tennessee, Illinois, Virginia, Colorado, Louisiana, Ohio, Alabama, South Carolina, Kentucky, California, Massachusetts, Missouri, Texas, Utah, Florida, Idaho, and Nevada).  Lilly has filed motions to sever and transfer in six of the other cases pending in this District.  *See Boles*, 1:15-cv-351-JMS-DKL at dkt. 22; *DeCrane*, 1:15-cv-365-JMS-DKL at dkt. 23; *Bickham*, 1:15-cv-531-WTL-MJD at dkt. 12; *Courtney*, 1:15-cv-643-TWP-MJD at dkt. 14; *Washington*, 1:15-cv-700-WTL-DML at dkt. 12; *Jones*, 1:15-cv-701-JMS-MJD at dkt. 12.

Around the time that Plaintiffs' counsel filed the latest lawsuits in this District, they also sought to transfer eleven cases pending in different parts of the country to this District, but all of

the courts to consider those motions denied them.[1]  Last week, however, an Eastern District of California court granted the plaintiffs' motion to transfer the claims of non-California plaintiffs in three Cymbalta-related lawsuits to this District, after severing their claims from the California plaintiffs' claims.  *See Nelson-Devlin, et al. v. Eli Lilly and Company*, 2:14-cv-002811-KJM-EFB (E.D. Cal.) at dkt. 30; *Ben, et al. v. Eli Lilly and Company*, 2:14-cv-02914-KJM-EFB (E.D. Cal.) at dkt. 28; *Wolff, et al. v. Eli Lilly and Company*, 2:14-03004-KJM-EFB (E.D. Cal.) at dkt. 27.[2]

Significantly, on July 23, 2015, plaintiffs in the numerous Cymbalta-related lawsuits moved to transfer the pending Cymbalta cases to an MDL – this time asking that the MDL proceed in this District.  *In re: Cymbalta (Duloxetine) Products Liability Litigation (No. II)*, MDL No. 2662 at dkt. 1.  That motion has been set for an October 1, 2015 hearing before the JPML.

### B.  Plaintiffs' Claims

Plaintiffs Terri Hill, Jane Collett, Mary McCarty, James Sines, Sherry Whiteside, and Jacqueline Moore filed this lawsuit on February 2, 2015, [Filing No. 1], and the operative Second Amended Complaint on March 30, 2015, [Filing No. 16].  They allege that they suffered injuries and damages "as a result of Lilly's failure to provide adequate instructions for stopping Cymbalta and an adequate warning that fully and accurately informed Plaintiff[s] about the frequency, severity, and/or duration of symptoms associated with Cymbalta withdrawal."  [Filing No. 16 at

---

[1] *See, e.g., Cheshier v. Eli Lilly & Co.*, No. 1:14-cv-01265-GEB-SKO (E.D. Cal. April. 9, 2015) at dkt. 30; *Woodruff v. Eli Lilly & Co.*, No. 2:14-cv-01890-GEB-SKO (E.D. Cal. Apr. 9, 2015) at dkt. 27; *Wheeler v. Eli Lilly & Co.*, No. 3:14-cv-01882-AJB-BLM (S.D. Cal. Apr. 10, 2015) at dkt. 30; *Krupp v. Eli Lilly & Co.*, No. 8:14-cv-02792-MSS-TGW (M.D. Fla. Apr. 6, 2015) at dkt. 25; *Brotherton v. Eli Lilly & Co.*, No. 8:14-cv-02876-MSS-TGW (M.D. Fla. Apr. 6, 2015) at dkt. 28.

[2] The claims of the non-California plaintiffs in those cases are now pending in this District.  *See Ellis, et al. v. Eli Lilly and Company*, 1:15-cv-1482-TWP-TAB; *Hollinger, et al. v. Eli Lilly and Company*, 1:15-cv-1483-JMS-DKL; *Amundsen, et al. v. Eli Lilly & Company*, 1:15-cv-01484-RLY-DML.

1.]   Plaintiffs also allege that Lilly's design of Cymbalta and accompanying instructions "prevented [them] from properly tapering off of the drug." [Filing No. 16 at 1.]  Plaintiffs each provide specific details about their experience with Cymbalta in the Second Amended Complaint.

### 1. Terri Hill

Ms. Hill alleges that she is a citizen of South Carolina.  [Filing No. 16 at 2.]  She alleges that she was prescribed Cymbalta in 2004 by her physician for treatment of depression, and that "[i]n or around February 2012" she stopped taking Cymbalta, and "within days of stopping Cymbalta, [she] experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta [including] extreme mood swings, agitation, irritability, nightmares, sleep disturbances, insomnia, vertigo, dizziness, suicidal thoughts, and nausea." [Filing No. 16 at 12.]

### 2. Jane Collett

Ms. Collett alleges that she is a citizen of Kentucky.  [Filing No. 16 at 2.]  She alleges that she was prescribed Cymbalta by her physician in November 2005 for depression and pain related to fibromyalgia, but ran out of Cymbalta in February 2014, could not refill her prescription, and never took Cymbalta again.  [Filing No. 16 at 13.]  Ms. Collett alleges that she suffered from "extreme mood swings, crying spells, agitation, irritability, aggressiveness, electric shock-like sensations in her head, dizziness, vertigo, nausea, mild suicidal thoughts, panic attacks, insomnia, confusion, memory loss, and disorientation" upon ceasing Cymbalta. [Filing No. 16 at 13.]

### 3. Mary McCarty

Ms. McCarty alleges that she is a citizen of Texas.  [Filing No. 16 at 2.]  She alleges that her physician prescribed Cymbalta to her in February 2009 for anxiety and depression.  [Filing No. 16 at 14-15.]  She alleges further that she "ran out of her supply of Cymbalta" in March 2013, and experienced withdrawal symptoms including "extreme mood swings, crying spells,

aggressiveness, irritability, nausea, vomiting, diarrhea, panic attacks, nightmares, insomnia, vertigo, dizziness, suicidal thoughts, cold sweats, body aches, and shakes." [Filing No. 16 at 15.] Ms. McCarty alleges that due to the severity of her withdrawal symptoms, she began taking Cymbalta again in April 2013 and continues to take it currently. [Filing No. 16 at 15.]

### 4. *James Sines*

Mr. Sines alleges that he is a citizen of Alabama. [Filing No. 16 at 2.] He alleges that he was prescribed Cymbalta by his physician in February 2013 for neuropathy, but that he missed doses of Cymbalta and then suffered withdrawal symptoms, so "would then restart his use of Cymbalta due to the fact that the withdrawal effects were too painful." [Filing No. 16 at 16.] He alleges that he ran out of Cymbalta in mid-December 2014, could not refill his prescription, has not taken it since, and has suffered from "extreme mood swings, electric shock-like sensations in his head and body, nausea, vomiting, diarrhea, suicidal thoughts, panic attacks, flu-like aches and pains or symptoms, aggression, agitation, irritability, confusion, dizziness, light-headedness, fatigue, headaches, excessive sweating, body tremors, heart palpitations, and intermittent lack of motor skills." [Filing No. 16 at 16-17.]

### 5. *Sherry Whiteside*

Ms. Whiteside alleges that she is a citizen of Tennessee. [Filing No. 16 at 2.] She alleges that her family nurse practitioner prescribed Cymbalta in March 2012, and that she attempted to "cease ingestion" of Cymbalta in March 2014, suffered "brain zaps, brain shocks and dizziness to the head," and began taking Cymbalta again in March 2014 because "the withdrawal effects were too painful." [Filing No. 16 at 18.]

6. *Jacqueline Moore*

Ms. Moore alleges that she is a citizen of Idaho, [Filing No. 16 at 2], and began taking Cymbalta in September 2012 after receiving a prescription from her physician.  [Filing No. 16 at 19.]  She alleges that she attempted to stop taking Cymbalta in December 2012, but suffered from "muscle jerks in the right and left legs."  [Filing No. 16 at 19.]

7. *Claims Asserted by All Plaintiffs*

All of the Plaintiffs allege that "[i]f Lilly had adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and/or duration, [their] physician would not have prescribed the drug to [them]; [they] would have refused the drug; and/or [their] physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid [their] injuries and damages."  [Filing No. 16 at 19-20.]  They assert claims under their respective state's law for: (1) negligence; (2) strict product liability – design defect; (3) strict product liability – failure to warn; (4) negligent misrepresentation; (5) fraud; and (6) breach of implied warranty.  [Filing No. 16 at 20-34.]  They seek compensatory and punitive damages, and attorneys' fees and costs.  [Filing No. 16 at 34-35.]

**C. The Motion to Sever and Transfer**

Lilly filed the pending Motion to Sever and Transfer Plaintiffs' Claims on June 23, 2015, arguing that Plaintiffs' claims should be severed into separate actions, and that each action should be transferred to Plaintiffs' home districts.  [Filing No. 22.]  The Court will first discuss the portion of the motion requesting that Plaintiffs' claims be severed into separate actions, and then will discuss whether, if so, Plaintiffs' claims should be transferred to their respective home states.

## II.
### MOTION TO SEVER

**A.  Standard of Review**

Federal Rule of Civil Procedure 20 allows joinder of multiple parties only when the right to relief they assert arises out of the same transaction or occurrence, and there are common questions of law or fact that will arise.  When that is not the case, "[t]he court may…sever any claim against a party."  Fed. R. Civ. P. 21.  Generally, if a district court finds that a plaintiff has misjoined parties, the court should sever those parties or claims, allowing those grievances to continue in spin-off actions, rather than dismiss them.  *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).  Additionally, even if claims are properly joined, "[u]nder Rule 21 the district court has the discretion to sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice."  *Vermillion v. Levenhagen*, 604 Fed. Appx. 508, 513 (7th Cir. 2015) (citing *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); and *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)).  "Discrete and separate" means that "one claim must be capable of resolution despite the outcome of the other claim."  *Gaffney*, 451 F.3d at 442.

In determining whether to sever claims, a court may consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."  *Allstate Property & Cas. Ins. Co. v. Omega Flex, Inc.*, 2013 WL 786764, *2 (S.D. Ind. 2013) (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F.Supp.2d 854, 862 (C.D. Ill. 2003)).

### B. Discussion

Lilly argues that Plaintiffs' actions should be severed because the lawsuit "combines the claims of six plaintiffs from different states whose allegations rest on distinct, unrelated factual scenarios: Cymbalta treatment over six different time periods, presumably in at least six different states, for at least four different conditions….; use of the medicine under the care of multiple healthcare professionals from a range of medical subspecialties, affiliated with different practices and, potentially, varying degrees of exposure to the relevant product labeling; a host of potential co-medications and comorbidities; and, finally, different discontinuation methods (whether abrupt or tapered) allegedly resulting in a range of symptoms of varying type, severity, and duration." [Filing No. 23 at 16-17.] Lilly contends that Plaintiffs' actions should be severed because they arise from distinct occurrences and present distinct questions of fact and law, severance would avoid confusion and prejudice, and allowing misjoined claims to proceed is contrary to judicial economy. [Filing No. 23 at 17-24.]

Plaintiffs respond that their claims arise out of the same transaction or occurrence – namely, "Lilly's development of Cymbalta and its decision to market it while downplaying the risk of debilitating and potentially life-threatening withdrawal symptoms. Plaintiffs' claims hinge on Lilly's concealment of the frequency, duration, and severity of Cymbalta withdrawal, and Lilly's conduct in that regard is the same for each Plaintiff." [Filing No. 27 at 16 (emphasis omitted).] Plaintiffs also argue that their claims present common questions of law and fact, because "Lilly's conduct…was uniform toward each of them." [Filing No. 27 at 17.] Plaintiffs contend that joinder will allow the Court to make some uniform determinations regarding the scope of discovery, pretrial orders, Daubert hearings, the appropriateness of punitive damages, affirmative defenses, the admissibility of evidence, and the scope of trial. [Filing No. 27 at 18.] Finally, Plaintiffs argue

that confusion or prejudice related to a joint trial is not a valid concern, because their claims could be severed for trial purposes after being joined for pretrial proceedings.  [Filing No. 27 at 18-19.] Plaintiffs make no claim however, that these particular Plaintiffs were joined together for any specific reason.  Rather it appears as though in this case and the other Cymbalta cases discussed previously, state law claims by people from different states were batched together in haphazard fashion.

On reply, Lilly argues that Plaintiffs concede they are attempting to circumvent the JPML's denial of an MDL by "creating a consolidated proceeding in this Court," and that they "should not now be permitted to avoid the JPML's ruling by filing in this Court multi-plaintiff cases on behalf of scores of unrelated and factually and legally distinct plaintiffs."  [Filing No. 32 at 2-3.]  Lilly again focuses on its argument that Plaintiffs' claims "present numerous distinct questions of fact and law arising out of distinct occurrences."  [Filing No. 32 at 4.]  Lilly also argues that the laws of at least six different states will apply to Plaintiffs' claims, and that there are significant differences in those state's laws.  [Filing No. 32 at 5-7.][3]

The Court will consider the five factors set forth above to determine whether severance of Plaintiffs' claims is appropriate.

### 1.  Same Transaction or Occurrence

While there is "no hard and fast rule for determining whether a particular situation constitutes a single transaction or occurrence for purposes of Rule 20," courts will analyze the facts of each case and consider "when the alleged conduct occurred, whether the same people were

---

[3] The Court has also considered the parties' supplemental filings.  [See Filing No. 41; Filing No. 42.]

involved, whether the conduct was similar, and whether it implicated a system of decision-making or widely-held policy." *Martinez v. Haleas*, 2010 WL 1337555, *3 (N.D. Ill. 2010).

Plaintiffs maintain that their claims all arise from the same transactions or occurrences – "Lilly's development of Cymbalta and its decision to market it while downplaying the risk of debilitating and potentially life-threatening withdrawal symptoms," and "Lilly's concealment of the frequency, duration, and severity of Cymbalta withdrawal, and Lilly's conduct in that regard …." [Filing No. 27 at 16 (emphasis omitted).]  But the Court finds this to be a simplistic view of Plaintiffs' claims.  While some of Plaintiffs' claims relating to Cymbalta's development and the way in which Lilly marketed and sold the drug may arise from the same set of facts, the crux of Plaintiffs' claims – that Lilly's actions caused injury to them – do not.  For example, Plaintiffs' fraud claims are highly individualized and, depending on applicable state law,[4] likely will not turn on the wording of Lilly's warning, but rather on whether each Plaintiff's medical provider – or "learned intermediary" – conveyed that warning to their patient.  *See, e.g.*, *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 763-64 (Ky. 2004) (Under Kentucky law, "learned intermediary doctrine" is "an exception to the general rule that a manufacturer's duty to warn of any risks or dangers inherent in the product runs to the ultimate consumer."  Instead, the manufacturer's obligation to warn runs only to the medical provider and not the patient).  So, while there may be some occurrences that are common to Plaintiffs' claims, the key occurrences (here, Plaintiffs' interactions with their medical providers) will not be common.

The Court's view that Plaintiffs' claims do not arise from a common transaction or occurrence is in keeping with the consistent reluctance of federal courts to treat products liability

---

[4] As a federal court sitting in diversity, the Court will apply state substantive law and federal procedural law.  *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001).

claims as arising from the same transaction or occurrence merely because they relate to the same medicine or medical device. *See, e.g.*, *McGrew v. Howmedica Osteonics Corp.*, 2015 WL 159367, *2-3 (S.D. Ill. 2015)* ("In the medical products liability context, 'medical and legal causation present formidable obstacles under Rule 20.'…Plaintiffs have not alleged that they were implanted with the device by the same physician or even in the same hospital. Similarly, their resulting injuries and treatments for those injuries are varied. In fact…the only connection the [plaintiffs] have to one another is the fact that they were all implanted with the same device. If the Court were to find joinder appropriate based on that lone fact, then nothing would limit the joinder of products liability plaintiffs in one case"); *McNaughton v. Merck & Co., Inc.*, 2004 WL 5180726, *3 (S.D. N.Y. 2004)* ("The claims asserted by [plaintiff] and the 64 other potential plaintiffs against Merck are based upon the plaintiffs' ingestion of the drug VIOXX and the injuries they allegedly sustained as a result of that ingestion. The claims are not otherwise related, and joinder under these circumstances would be improper. To group the plaintiffs together primarily for filing convenience does not satisfy the requirements of Rule 20"); *In re Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136, 145-46 (S.D. N.Y. 2001) (plaintiffs who all alleged they were exposed to the same drug improperly joined their claims because they "do not allege that they received [the drug] from the same source or that they were exposed to [the drug] for similar periods of time," so the same transaction or occurrence requirement of Rule 20 was not met).

Because Plaintiffs cannot meet the first requirement of Fed. R. Civ. P. 20 – that their claims arise out of a single transaction or occurrence – joinder of their claims in one action is inappropriate. The Court will also consider, however, the other factors related to joinder.

## 2.   *Common Questions of Law or Fact*

Rule 20 permits individuals to join in one action as plaintiffs if, in addition to having claims that arise from the same transaction or occurrence, "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B).  Plaintiffs again focus on their view that Lilly's conduct was the same toward each of them, and that this conduct will determine Lilly's liability "to a much greater degree than, say, which particular withdrawal symptoms each of the Plaintiffs experienced or the underlying medical condition Cymbalta was intended to treat." [Filing No. 27 at 17.]  The Court disagrees.  Each Plaintiff will need to show that Lilly's conduct caused his/her injuries, which will require evidence relating to why his/her health care provider prescribed Cymbalta, the nature of his/her health care provider's knowledge regarding withdrawal from Cymbalta, for what medical condition he/she was taking Cymbalta, how much Cymbalta he/she was taking, how long he/she took Cymbalta, and how he/she attempted to discontinue using Cymbalta.  These issues are at the very core of Plaintiffs' claims, require highly individualized inquiries, and are apparent from Plaintiffs' allegations in the Second Amended Complaint, which include plaintiffs who took Cymbalta for different amounts of time, for different reasons, discontinued Cymbalta using different methods and strategies, and suffered different symptoms.[5] These differences make Plaintiffs' claims improper for joinder.  *See In re Accutane Products Liability Litigation MDL No. 1626*, 2012 WL 4513339, *1 (M.D. Fla. 2012)* ("The law is clear that

---

[5] For example: (1) Plaintiff Jane Collett alleges that "[i]n or around February 2014, [she] ran out of Cymbalta…[,] could not refill her prescription[, and] never took Cymbalta again," [Filing No. 16 at 13]; (2) Plaintiff Mary McCarty "ran out of her supply of Cymbalta" immediately before experiencing withdrawal symptoms, [Filing No. 16 at 15]; and (3) Plaintiff James Sines "missed doses of Cymbalta and suffered from withdrawal symptoms," [Filing No. 16 at 16].  Conversely, Plaintiffs Sherry Whiteside and Jacqueline Moore "attempted to cease ingestion of Cymbalta," [Filing No. 16 at 18-19], rather than being forced to cease taking Cymbalta due to other circumstances.

large multi-plaintiff complaints are improper under Fed. R. Civ. P. 20(a).  Many federal courts hold that product liability cases are generally inappropriate for multi-plaintiff joinder because such cases involve highly individualized facts and '[l]iability, causation, and damages will…be different with each individual plaintiff.'…  These…plaintiffs reside in different states, allegedly ingested Accutane at different times, and have allegedly been diagnosed with different adverse reactions to Accutane.  The Court has inherent authority to control its own docket and finds severance of these cases is in the best interests of the litigants and the administration of justice").

Additionally and significantly, Plaintiffs assert state law claims, yet hail from different states.  While the Court is equipped to apply the law of different states, there can be differences among those laws that further highlight the inappropriateness of joinder here.  [*See, e.g.*, Filing No. 23 at 20-21 (Lilly citing cases and statutes which point to differences in the requirements for proving proximate cause in South Carolina, Texas, and Kentucky); Filing No. 32 at 5-6 (Lilly discussing other differences in the laws of Texas, South Carolina, and Alabama).]  Any common questions of law or fact are so eclipsed by the individualized issues that dominate Plaintiffs' claims, that joinder of Plaintiffs' claims is not warranted here.

### 3.   Judicial Economy

Plaintiffs argue that judicial economy "strongly weigh[s] against severing Plaintiffs' claims," because this Court can:

·   Determine the permissible scope of discovery;

·   Enter uniform pretrial orders;

·   Conduct Daubert hearings;

·   Determine whether punitive damages are appropriate;

·   Uniformly address Lilly's affirmative defenses, such as federal preemption;

· Rule on the admissibility of common evidence; and

· Determine the scope of trial.

[Filing No. 27 at 18.]

Upon closer examination, however, most of these issues would not lend themselves to uniform determinations and/or would not meaningfully increase the efficiency with which Plaintiffs' claims are resolved.  For example, the scope of discovery is governed by the Federal Rules of Civil Procedure, and the Court relies on the magistrate judges to apply those rules when issues or disputes arise.  What may be an issue in connection with one Plaintiff's claims may not be an issue for another Plaintiff.  Further, the JPML noted – and Plaintiffs do not dispute – that discovery of Lilly's documents and witnesses "is essentially complete," so the "scope" of discovery at least as to Lilly-specific evidence has already been determined.  Additionally, this District has a uniform case management plan, so "uniform pretrial orders" are not necessary because, for the most part, they already exist.  Other issues, such as whether punitive damages are appropriate and whether certain affirmative defenses apply, will likely turn on the specific state law applicable to each Plaintiff's claims.  The admissibility of certain evidence, and the "scope of trial" may vary depending on the particular Plaintiff's circumstances.  The only areas that the Court finds may potentially overlap among Plaintiffs' claims are resolution of Daubert and federal preemption issues.  Those issues are simply not enough to justify keeping Plaintiffs' claims joined to promote judicial economy.

The Court also recognizes that keeping Plaintiffs' claims joined will have little to no positive impact on each Plaintiff, but will be much more convenient for Plaintiffs' counsel.  Indeed, Plaintiffs' counsel notes they have filed "hundreds" of Cymbalta-related cases around the country, that there are "thousands of cases within the pipeline," and that Plaintiffs face a "logistical

quagmire." [Filing No. 27 at 6.] But it is really Plaintiffs' *counsel* that faces a "logistical quagmire," and it is a quagmire of counsel's own making. The rule does not include convenience to counsel as a consideration. Instead, Plaintiffs' counsel must be prepared to devote the resources needed to effectively litigate each client's claim, and should not file numerous lawsuits on behalf of dozens of clients if unable to do so. Rather than convenience to counsel, the Court is concerned with effectively and efficiently resolving each litigant's controversy.

### 4. *Prejudice*

The fourth factor – whether prejudice will be avoided if severance is granted – also weighs in favor of severance. Plaintiffs' only response to Lilly's prejudice argument is that their claims can be severed for trial purposes. [Filing No. 27 at 19.] The Court acknowledges that Plaintiffs' claims could remain joined for pre-trial purposes, then severed for trial to avoid prejudice to Lilly. However, as discussed above, there are so few advantages to keeping the claims joined that severing now is a far better solution to resolving each Plaintiff's claim expeditiously.

### 5. *Witnesses and Documentary Proof*

Plaintiffs and Lilly do not discuss witnesses and documentary proof in connection with the Motion to Sever. While much of the Lilly-related witnesses and documents – which, according to the JPML, have already largely been disclosed to Plaintiffs through their counsel– will overlap between Plaintiffs' claims, none of the witnesses and documents related to the Plaintiffs' individualized circumstances will overlap. Accordingly, this factor does not favor joinder.

In sum, a district court has "broad discretion" in determining whether claims should be severed, and the Court exercises that discretion to order severance here. *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)); *see also Fore Investments, LLC v. Travelers Indem. Co. of*

*America*, 2013 WL 3467328, *7 (S.D. Ind. 2013) (underlying any decision on a Rule 20 motion to sever is a "discretionary and case-specific analysis"); *Bennett v. Sch. Dirs. of Dist. 115*, 1996 WL 495555, *2 (N.D. Ill. 1996) ("The determination of whether to sever [claims] is committed to the broad discretion of the trial judge").  The five factors all weigh in favor of severing Plaintiffs' claims, and requiring them to file their claims separately, in different lawsuits.

## III.
### MOTION TO TRANSFER

#### A.  Standard of Review

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice.  *No Baloney Mktg., LLC v. Ryan*, 2010 WL 1286720, *10-11 (S.D. Ind. 2010).  The moving party bears the burden of showing that transfer will "serve the convenience of the parties, the convenience of the witnesses, and the interest of justice."  *Id.* at *10.  Additionally, federal district courts "have the inherent power to administer their dockets so as to conserve scarce judicial resources."  *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

In the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).  Moreover, 28 U.S.C. § 1404(a) "permits a flexible and individualized analysis" and "affords the district courts the opportunity to look beyond the narrow or rigid set of considerations in their determinations."

*Research Automation*, 626 F.3d at 978.   This Court is "grant[ed] a substantial degree of deference…in deciding whether transfer is appropriate." *Id.*

### B.  Discussion

Lilly argues in support of its request to transfer Plaintiffs' actions to their home districts that Plaintiffs' choice of forum should be given little deference since it is not their home district, that Indiana does not have a significant connection to the events underlying Plaintiffs' claims, and that Lilly's residence here "does not outweigh the more significant relationship between Plaintiffs' claims and their home districts." [Filing No. 23 at 25-27.]  Lilly notes that other federal district courts have "uniformly rejected" plaintiffs' motions to transfer their cases to this District.  [Filing No. 23 at 28.]  Lilly asserts that the key testimony in these cases will be from Plaintiffs' treating physicians, who presumably reside in Plaintiffs' home districts, and whose attendance at trial cannot be compelled because they are outside this Court's subpoena power.  [Filing No. 23 at 29.] Lilly argues further that public interest supports transfer because the Plaintiffs' home district courts would be more familiar with the state law applicable to each Plaintiff's claims, and because those home districts have an interest in adjudicating the claims that arose there.  [Filing No. 23 at 31.]

In response, Plaintiffs argue that their choice of forum is "paramount," and should rarely be disturbed.  [Filing No. 27 at 19-20.]  They contend that the convenience of the parties and witnesses does not favor transfer because many of Lilly's key witnesses reside within this District, Plaintiffs would not be able to compel the attendance of those witnesses if their cases were transferred because they would be outside of their home district court's subpoena power, and Lilly's argument that it would not be able to obtain Plaintiffs' medical providers' voluntary attendance at trial is speculation.  [Filing No. 27 at 20-21.]  Plaintiffs also argue that Indiana does have a strong connection to the material events underlying the lawsuit, because Lilly's corporate

18

headquarters is here.  [Filing No. 27 at 22.]  Finally, Plaintiffs assert that the interest of justice does not favor transfer because transferring their claims would eliminate the opportunity for consolidation, this Court is capable of applying other state's laws, and the "use of a local jury to adjudicate Lilly's conduct is particularly 'just.'"  [Filing No. 27 at 24-25.]

On reply, Lilly reiterates its argument that the balance of factors weighs in favor of transfer because "all of the witnesses and facts critical to Plaintiffs' lawsuits reside in (or arise out of) Plaintiffs' home jurisdictions."  [Filing No. 32 at 7.]  Lilly downplays its presence in this District by arguing that company-sided discovery, including the depositions of Lilly witnesses, is "essentially complete," and that outstanding discovery relates mainly to the individual Plaintiff's medical providers and other witnesses.  [Filing No. 32 at 8-9.]

The Court finds that, now that the claims have been severed, it is unable to determine whether each Plaintiff's claims should be transferred.  The parties' briefs addressed transfer based on the present multi-Plaintiff status of the case.  Lilly made its arguments in favor of transfer in conjunction with its arguments in favor of severance – and Plaintiffs responded in the same way.  Now that the Court has determined that Plaintiffs' claims will be severed, the parties' collective analysis of the transfer issue no longer applies.  Indeed, transfer of some of the Plaintiffs' claims to their home districts may be prudent, but transfer may not be warranted for other Plaintiffs' claims.  The Court must analyze the transfer factors as they apply to each Plaintiff's claim. Accordingly, it denies Lilly's motion to the extent that it seeks transfer of Plaintiffs' collective claims to their home districts, but does so without prejudice should Lilly seek transfer in any individual case.

The Court makes several observations about the transfer analysis that the parties set forth in their briefs, in hopes that these observations might streamline the presentation of issues that may arise in any future motions to transfer.

- First, the parties did not analyze docket congestion and likely speed to trial in the transferor and potential transferee forums – factors that the Seventh Circuit Court of Appeals considers as part of the interest of justice analysis. *Research Automation*, 626 F.3d at 978. The Court notes that it has the twelfth busiest civil docket – by weighted caseload – in the country. http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3 (last viewed September 28, 2015). Any future motion to transfer should discuss this factor and should provide an analysis of this District's workload compared with that of the specific potential transferee district.

- Second, when analyzing the convenience of transfer to the parties and witnesses, the parties should be mindful that convenience of counsel is not a proper consideration in the transfer analysis. *See Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (§ 1404(a) does not "provide that the convenience of counsel is a factor to be considered" in the transfer analysis); *Whitney v. Big Dog Holdings, Inc.*, 2007 WL 3334503, *6 n.3 (S.D. Ind. 2007) (same principle).

- Third, the Court is aware from circumstances in other cases that a party with control over out-of-state witnesses has sometimes stipulated to produce those witnesses for live testimony at trial. The current record did not disclose whether either party has offered to stipulate to the production of its out-of-state witnesses – at the party's expense – for live testimony at trial.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Lilly's Motion to Sever and Transfer Plaintiffs' Claims, [Filing No. 22], to the extent that it **ORDERS** that Plaintiffs' claims shall be **SEVERED**. As set forth below, any Plaintiff who wishes to proceed in this action must file a separate complaint within 60 days of the date of this Order to proceed with their individual claims. Additionally, the Court **DENIES WITHOUT PREJUDICE** Lilly's Motion to Sever and Transfer Plaintiffs' Claims, [Filing No. 22], to the extent it denies Lilly's request to transfer Plaintiffs'

claims to their home districts at this time. This Order does not preclude Lilly from moving to transfer any Plaintiff's claims should they be filed as a separate case.

The Court establishes the following procedure for the filing of individual complaints in the separate cases ordered herein:

1. Each individual plaintiff (other than Ms. Hill) must pay the $400.00 filing fee when an individual complaint is filed on his or her behalf.

2. The undersigned has consulted with the Chief Judge and he has directed that each individual case will be randomly assigned among active district judges and magistrate judges.  Each individual case will be assigned its own cause number and will be subject to the Local Rules for the Southern District of Indiana and all applicable case management procedures.  Each individual action shall be considered a continuation of this action and shall be subject to all prior rulings in this action to the extent applicable.

3. Any individual complaint must be filed within **60 days** of the date of this Order. If a plaintiff fails to file a complaint within 60 days from the date of this Order, his or her claims will be **DISMISSED WITHOUT PREJUDICE**.

4. After 65 days, this action will be considered to assert claims on behalf of Terri Hill only.  All other plaintiffs will be terminated from this action.

Date: September  29, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**